**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **WEBCOR CONSTRUCTION, LP, ET AL.,**<br><br>Plaintiffs,<br><br>vs.<br><br>**ZURICH AMERICAN INSURANCE COMPANY, ET AL.,**<br><br>Defendants. | CASE NO. 17-cv-02220-YGR<br><br>**ORDER GRANTING MOTION TO DISMISS FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND; DENYING MOTIONS TO DISMISS CROSS-CLAIMS AS MOOT; DENYING ADMINISTRATIVE MOTION TO STRIKE AS MOOT; VACATING CASE MANAGEMENT CONFERENCE**<br><br>Re: Dkt. Nos. 52, 122, 125, 144 |

Plaintiffs Webcor Construction, L.P. ("Webcor") and Architectural Glass and Aluminum Co., Inc. ("AGA") bring this action for breach of insurance contracts, breach of the implied covenant of good faith and fair dealing, and declaratory relief against defendants National Union Fire Insurance ("National"), Old Republic General Insurance, Liberty Insurance Underwriters Inc., and Zurich American Insurance. Plaintiffs filed their first amended complaint on June 12, 2017. (Dkt. No. 38, "FAC".) National filed its own motion to dismiss as to: (1) the first and fifth causes of action for breach the duty to defend by Webcor and AGA, respectively; (2) the second and seventh causes of action for breach of the duty to indemnify by Webcor and AGA, respectively; (3) the fourth and eighth causes of action for bad faith breach of contract by Webcor and AGA, respectively; and (4) the tenth and eleventh causes of action for declaratory relief by AGA and Webcor, respectively. The gravamen of National's motion is the argument that neither AGA nor

Webcor has alleged that their primary insurance coverages were exhausted, and therefore they failed to allege any contractual duty to defend or indemnify arose in National, an excess insurance carrier.

Having carefully considered the papers submitted, the pleadings in this action, and the matters properly subject to judicial notice,[1] and for the reasons set forth below, the Court **GRANTS** the Motion to Dismiss **WITH LEAVE TO AMEND**.[2] The FAC alleges the fact that defendant was an excess insurer, but fails to allege sufficient facts indicating whether the limits of the primary insurer were reached or when the duty to defend, if any, arose.

**I.  BACKGROUND**

The FAC alleges that defendant insurers, including moving defendant National, engaged in bad faith and dilatory tactics in the settlement of the underlying lawsuit. CDC San Francisco LLC ("CDC") filed the underlying construction defect case against Webcor and AGA in San Francisco Superior Court. That action alleged that the insulated glass units (IGUs) used to create the curtain walls (double-paned windows that function both as an exterior wall and a window) for the InterContinental San Francisco Hotel project developed a film and discoloration due to use of incompatible materials. CDC sought to hold AGA and Webcor liable for the cost of replacing and repairing 6,400 IGUs.

The FAC alleges that CDC, Webcor, AGA, and defendants were required to participate in mandatory settlement conferences before and during the trial of the underlying action. Plaintiffs

---

[1] Defendant National seeks judicial notice of the complaint and attachments thereto in the underlying litigation. (Dkt. No. 53.) That motion is **GRANTED**. Webcor seeks judicial notice of a stipulation for substitution it filed in the underlying action regarding the correct entity name. (Dkt. No. 87.) This motion is likewise **GRANTED**.

In their second amended complaint, plaintiffs are directed to revise the allegations to reflect that Webcor Construction, L.P. d/b/a Webcor Builders was substituted in for Webcor Construction, Inc. d/b/a/ Webcor Builders in the underlying action. (*See* Webcor Oppo. at 8:12-14; Webcor Request for Judicial Notice, Dkt. No. 87, Exh. 1.)

[2] Plaintiffs argue that the motion should be converted to a motion for summary judgment because National sought judicial notice of the underlying complaint and attached a letter from counsel regarding reservation of rights to National's motion. The Court **STRIKES** the letter and has not considered it. The Court declines to deem the motion one for summary judgment.

allege that there were opportunities to settle for much less than the settlement ultimately reached, but that "the [d]efendants did not participate meaningfully in the settlement process and instead asserted coverage positions that they knew or should have known did not apply to preclude coverage." (FAC ¶ 41.) Plaintiffs allege that, "[f]ollowing failed attempts to settle prior to the trial commencing on March 14, 2017, Webcor and AGA both demanded that National Union take over their defenses." (*Id.* ¶ 42.) National Union accepted the tender of AGA and denied Webcor's tender. (*Id.* ¶ 43.) In its letter to Webcor rejecting the tender of its defense, National Union, for the first time, denied coverage entirely for the underlying action, though plaintiffs allege there were no new facts or information warranting that change in position. (*Id.* ¶ 44.)

As the trial continued, CDC made a last and final demand to AGA and Webcor to settle the underlying action. Plaintiffs allege that "the [d]efendants continued to drag their feet," resulting in plaintiffs having to "come out of pocket" to fund the settlement fully. (*Id.* ¶ 45.) On April 24, 2017, a settlement of the underlying action was reached. (*Id.* ¶ 46.)

## II. APPLICABLE STANDARD

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)); *see also* Fed. R. Civ. P. 12(b)(6). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice. *Iqbal*, 556 U.S. at 679. The complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Further, "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id*.

3

## III.   DISCUSSION

### A.   Duty to Defend Claims (First and Fifth Causes of Action)

Plaintiffs allege a breach of duty to defend in the first and fifth causes of action. The FAC alleges that a primary policy was sold by defendant Old Republic to AGA, with Webcor listed as an additional insured. In the first cause of action, Webcor alleges that both Old Republic and National breached the duty to defend and that National failed both to provide a defense and to fund that portion of the settlement attributable to Webcor's exposure to CDC's attorneys' fees and costs.[3]

In the fifth cause of action, AGA alleges National breached its duty to defend AGA under excess/umbrella policies issued by National to Viracon. AGA alleges that "tender of the underlying action" was made to National under the Viracon policies in May and June of 2016, and that, on May 4, 2017, after the settlement of the underlying action, National denied AGA's tender "under certain *excess/umbrella* policies issued to Viracon." (FAC ¶¶ 76, 77, 79, emphasis supplied.)[4]

National argues that Webcor and AGA fail to state a claim because they allege that National is an excess insurer, but do not allege that the primary policies were exhausted. Thus, the FAC does not allege facts that would establish National had a duty to defend or indemnify plaintiffs.

While a duty to defend is broader than the duty to indemnify, "California's rule of 'horizontal exhaustion' in liability insurance law requires all primary insurance to be exhausted

---

[3] Webcor concedes that Old Republic continued to defend it in the litigation. (FAC ¶ 51.)

[4] The FAC alleges that National denied AGA's tender under "certain *primary* policies issued to Viracon" on October 21, 2016 (FAC ¶ 78, emphasis supplied), but that it accepted AGA's tender at some point after the commencement of the trial on March 14, 2017. (FAC ¶ 43.) In its amended complaint, plaintiffs shall clarify this apparent contradiction.
Further, AGA's arguments in opposition—that the title of the claim mistakenly referred only to the Viracon policies and that its claim concerns primary policies, not excess policies—are belied by the vast majority of the allegations, which discuss excess policies by Viracon. (*See* FAC ¶¶ 75-81, 82.) In amending, AGA should indicate the nature of the policies under which it contends a duty arose and, with respect to Viracon's policies, facts indicating a potential for coverage thereunder.

before an excess insurer must 'drop down' to defend an insured, including in cases of continuing loss." *Padilla Const. Co. v. Transportation Ins. Co.*, 150 Cal. App. 4th 984, 986 (2007). "[U]nder California law, it is clear that '[a]ll primary insurance must be exhausted before liability attaches under a secondary policy.'" *Iolab Corp. v. Seaboard Sur. Co.*, 15 F.3d 1500, 1504 (9th Cir. 1994) (quoting *Olympic Ins. Co. v. Employers Surplus Lines Ins. Co.,* 126 Cal.App.3d 593, 599 (1981)). Thus, an insured cannot sue "the excess insurers for breach of contract until the legal obligations of the primary insurers [have] been determined and the excess policies [have] been triggered." *Id.* (affirming dismissal of claim for failure to allege exhaustion).

Plaintiffs' failure to allege exhaustion or even facts giving rise to *an inference* of exhaustion of the primary policies is insufficient.[5] A generalized allegation that plaintiffs have satisfied all conditions or are entitled to benefits under the applicable policies does not suffice. Similarly, the fact that other excess carriers have filed counter-claims for reimbursement does not give rise to an inference that the primaries have been exhausted or are otherwise unavailable that would relieve plaintiffs of their obligation to plead around an obvious defect in their complaint.

Plaintiffs argue that the rule of exhaustion has an exception under *Diamond Heights Homeowners Association v. National American Insurance Company*, 227 Cal. App. 3d 563 (1991), as recently affirmed by the Ninth Circuit in *Teleflex Medical Inc. v. National Union Fire Insurance Co. of Pittsburgh, PA*, 851 F.3d 976, 989 (9th Cir. 2017). *Diamond Heights* and *Teleflex* are not exceptions to the rule of exhaustion, but rather a means by which an excess insurer can be bound to a settlement to which it did not agree. Under *Diamond Heights*, if an excess carrier refuses to agree to a reasonable settlement approved by the insured and the primary insurer, it must agree to take over the defense or else face liability for contribution to the settlement.

---

[5] Plaintiffs contend that exhaustion is a defense, not a prerequisite to the duty element of their claims. Regardless of whether it is an element of the claim or defense, the face of the complaint reveals the pleading defect and plaintiffs must allege facts establishing that their claims are viable. *Cf. Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013) (affirming dismissal where statute of limitations defense was apparent from the pleading); *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004) ("when the plaintiff pleads itself out of court—that is, admits all the ingredients of an impenetrable defense . . ." dismissal under 12(b)(6) is appropriate).

5

*Diamond Heights*, 227 Cal. App. 3d at 580-81. However, the decisions in *Diamond Heights* and *Teleflex* assume that the reasonable settlement amount would go beyond the primary insurer's coverage limits and trigger the excess policy. *Diamond Heights*, 227 Cal. App. 3d at 570, 580; *Teleflex*, 851 F.3d at 982, 986. Again, that is not alleged in the FAC.

Similarly, while plaintiffs argue that an insurer-funded defense does not excuse another insurer's own obligation to defend, plaintiffs' failure to allege facts indicating that National's duties as an excess insurer were triggered requires dismissal of their claims. While AGA states in opposition that National refused to take over its defense at the point in time when the primary carrier had tendered its limits and National refused to settle, such facts are not alleged, only argued. The FAC alleges only that *all* defendants refused to participate meaningfully in settlement, and when settlement attempts failed prior to trial, Webcor and AGA demanded that National take over their defense. (FAC ¶¶ 41, 42.) To the extent that AGA aimed to plead a theory that all primary insurers had tendered their limits, it did not do so.[6]

The motion to dismiss the duty to defend claims against National is **GRANTED WITH LEAVE TO AMEND**.

### B. Remaining Claims

If plaintiffs cannot state a claim for a duty to defend, then the other claims for breach of the duty to indemnify (second and seventh), breach of the duty of good faith and fair dealing (fourth and eighth), and declaratory relief based on the allegations of those claims (tenth and eleventh) will similarly fail as the duty to defend is broader. *See, e.g., Waller v. Truck Ins. Exch., Inc.*, 11 Cal.4th 1, 36 (1995) (bad faith plaintiff must allege and prove a benefit was due under the terms of the policy and the insurer unreasonably withheld that benefit). As a result, the allegations here are insufficient to support the remaining claims against National.

The Court further notes that plaintiffs make little to no effort to allege facts specific to each

---

[6] Webcor further contends that the allegation National defended AGA but denied Webcor's tender shows disparate treatment of its insureds, making breach of the duty to defend plausible. As noted above, the allegation that National defended AGA is contradicted by other allegations in the FAC. Webcor's discriminatory treatment argument is not supported by the conflicting allegations in the FAC. The Court does not reach its legal merit.

6

defendant. Rather, plaintiffs attribute conduct generically to all defendants. The revised complaint should provide additional detail.

The motion to dismiss these claims is **GRANTED WITH LEAVE TO AMEND** for the same reasons as stated above.

## IV. CONCLUSION

Accordingly, National's Motion to Dismiss the FAC's claims against it is **GRANTED WITH LEAVE TO AMEND** consistent with this order. Without further explication, the Court cannot adequately assess the viability of any potential claim.

Plaintiffs shall file their second amended complaint no later than **October 10, 2017**. Defendants shall file their response within 14 days of the filing of the second amended complaint.

In addition, because an amended complaint will impact the responsive pleadings and cross-claims of the other defendant insurance companies, National's pending motions to dismiss cross-claims of Liberty Insurance Underwriters, Inc. (Dkt No. 122) and Old Republic General Insurance Corporation of Pittsburgh, PA (Dkt. No. 125) are **DENIED WITHOUT PREJUDICE AS MOOT**.

Likewise, Liberty's administrative motion to strike National's Motion to Dismiss or bifurcate briefing (Dkt. No. 144), in which Old Republic joined, is **DENIED AS MOOT**.

However, the Court notes that National appears to be attempting to use the incorporation by reference doctrine and judicial notice as an attempt to obtain summary judgment on the allegations of the complaint, rather than dismissal for failure to state a claim under Rule 12(b)(6). To the extent National is seeking an interpretation of the policy, based upon admissions at the trial of the underlying action, summary judgment is the appropriate vehicle.

The Court further notes that, in its opposition to the administrative motion (Dkt No. 154), National misrepresented Liberty's answer to the FAC as admitting certain facts alleged, when its answer denied or stated that it was without sufficient information to admit or deny those facts. (*See* Liberty's Answer, Dkt. No. 56, at ¶¶ 9, 10 (responding to FAC ¶¶ 27, 28).) National also disregarded Local Rule 3-4(c)(2) (footnotes must conform to 12-point standard font requirement). National is cautioned to conform its filings to the Local Rules and standards of professionalism in future filings, or else face monetary or other sanctions.

The case management conference currently set for October 24, 2017, at 1:00 p.m. is **VACATED** and will be set by further notice to the parties.

This terminates Docket No. 52, 122, 125, and 144.

**IT IS SO ORDERED.**

Dated: September 28, 2017

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**