# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **WEBCOR CONSTRUCTION, LP, ET AL.,**<br><br>Plaintiffs**,**<br><br>vs.<br><br>**ZURICH AMERICAN INSURANCE COMPANY, ET AL.,**<br><br>Defendants**.** | CASE NO. 17-cv-02220-YGR<br><br>**ORDER GRANTING MOTION OF ACUITY TO DISMISS THIRD PARTY COMPLAINT FOR LACK OF PERSONAL JURISDICTION**<br><br>Dkt. No. 120 |

Third-party defendant Acuity brings the instant motion to dismiss the third-party complaint filed against it by defendant Old Republic General Insurance Corporation for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure. (Dkt. No. 120.) Old Republic's third party complaint (Dkt. No. 69) against Acuity is for contribution based upon the policy issued to non-party Midwest Curtainwalls ("Midwest"), a material supplier for the construction work that was the subject of the underlying litigation in the state court.

Having carefully considered the papers submitted, the pleadings in this action, and the matters properly subject to judicial notice, and for the reasons set forth below, the Court **GRANTS** the Motion to Dismiss Acuity for lack of personal jurisdiction. Old Republic fails to offer evidence to establish that Acuity is subject to personal jurisdiction in this Court.

## I. BACKGROUND

Plaintiffs Webcor Construction, L.P. ("Webcor") and Architectural Glass and Aluminum Co., Inc. ("AGA") bring the instant federal action for breach of insurance contracts, breach of the implied covenant of good faith and fair dealing, and declaratory relief. The instant action arises from litigation in the Superior Court of California, County of San Francisco. There, CDC San Francisco LLC ("CDC") brought a construction defect case against Webcor, AGA, Midwest,

Viracon, Inc. ("Viracon"), and Quanex I.G. Systems, Inc. ("Quanex"). (*See* RJN filed in connection with National's Motion to Dismiss, Dkt. No. 53, "the SF Action.") CDC had entered into a contract with Webcor for construction of the InterContinental San Francisco Hotel. (Second Amended Complaint ["SAC"], Dkt. No. 159, ¶ 19.) Webcor contracted with AGA for the design, construction, and installation of a curtain wall glazing system to consist of an interconnected system of blue glass forming the building's entire exterior.[1] AGA subcontracted with Midwest to design, engineer, and fabricate the aluminum curtain wall frames. AGA purchased the IGUs from their manufacturer, Viracon. Viracon purchased the PIB used to manufacture the IGUs from Quanex. Viracon shipped the IGUs to Midwest, and Midwest fabricated the individual aluminum curtain wall units to be installed on the project by AGA. (*Id.* ¶¶ 20-23.)

The SF Action was filed on June 9, 2015. It alleged that the IGUs used to create the curtain walls for the project developed a film and discoloration due to use of incompatible materials. CDC sought to hold the defendants in the SF Action liable for the cost of replacing and repairing 6,400 IGUs. (*Id.* ¶¶ 25, 33-38.) Trial of the action commenced March 14, 2017. (*Id.* ¶ 40.) After bouts of unsuccessful mediation, on April 24, 2017, a settlement of the underlying action was reached. (*Id.* ¶¶ 88, 97, 102.)

The instant insurance action was brought by AGA and Webcor against defendants National Union Fire Insurance ("National"), Old Republic, Liberty Insurance Underwriters Inc., and Zurich American Insurance.[2] Plaintiffs filed their first amended complaint on June 12, 2017, and a second amended complaint on October 10, 2017. (Dkt. Nos. 38, 159.) Old Republic is alleged to be the insurer of AGA, and Webcor is alleged to be an additional insured on the policies. (*See* Exh. A. to SAC.)

---

[1] There are many components in the glazing system, including insulated glass units ("IGUs") consisting of a double-paned window that functioned both as an exterior wall and a window. IGUs are comprised of two parallel glass panes separated by a sealed dry air space held apart by spacer bars. A sealant, polyisobutylene ("PIB"), is used to create a hermetically sealed space between the two parallel panes. (FAC ¶¶ 17-18.) The project required over 6,400 IGUs.

[2] The Court set forth, in a prior Order (Dkt. No. 157), the background of the underlying construction defect case, as well as the claims by Webcor and AGA.

2

In this federal action, Old Republic filed a third-party complaint against Acuity and Motorists Mutual Insurance Company on July 21, 2017. (Dkt. No. 69.) Old Republic alleges that it paid out monies to provide a defense for AGA and Webcor in the SF Action, and incurred other costs of defense. Old Republic alleges that the policy issued to non-party Midwest, the material supplier, by Acuity required that Acuity defend Webcor and AGA as well. Old Republic seeks contribution for these defense costs from Acuity.

## II. APPLICABLE STANDARD

Under Rule 12(b)(2), a case may be dismissed if the Court lacks personal jurisdiction over the defendant. Plaintiff bears the burden of demonstrating that jurisdiction is appropriate. Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons, looking to the state's long arm statute regarding service of summons. *See* Fed. Rule Civ. Proc. 4(k)(1)(A) (service of process effective to establish personal jurisdiction over defendant subject to jurisdiction in the state court where the district is located); *Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014) (same). California's long-arm statute, in turn, permits exercise of personal jurisdiction to the fullest extent permitted by federal due process. *Id.*; *see also Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1020 (9th Cir. 2017). The party filing the complaint bears the burden to establish jurisdiction. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008); *see also Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

## III. DISCUSSION

Old Republic has failed to establish a basis for personal jurisdiction over Acuity in this forum. For purposes of federal due process, two types of personal jurisdiction exist: general jurisdiction (sometimes called "all-purpose") and specific jurisdiction (sometimes called "case-linked"). *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1779–81 (2017). "A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Id.* A court with only specific jurisdiction over a defendant is limited to hearing claims deriving from the facts that establish jurisdiction in the forum. *Id.*

### A. General Jurisdiction

General jurisdiction has not been established over Acuity. In order to establish general jurisdiction over Acuity in California, Old Republic must show that Acuity has contacts that are "so 'continuous and systematic' as to render [it] essentially at home in" California. *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1020 (9th Cir. 2017) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Acuity is a Wisconsin insurance company with its principal place of business in Sheboygan, Wisconsin. It conducts no business in California, is not licensed to do business in California, does not sell insurance in California, and has no brokers or agents based in California. (Affidavit of Lea Kapral at ¶¶ 5-7.) Acuity does not accept insurance applications, collect premiums, or maintain any offices, bank accounts, or employees in California. (*Id.* ¶¶ 8-10.)

Old Republic argues that Acuity's filing of two prior, unrelated claims in litigation in California courts establishes general jurisdiction over it. The Court disagrees. The evidence offered is that the two other actions were: (1) when Acuity filed a complaint-in-intervention on behalf of an involuntarily dissolved insured; and (2) a small claims action. (Declaration of Geoffrey Hutchinson, Dkt. No. 142, at ¶¶ 2, 3.) The cases cited by Old Republic are ones in which the defendant had admitted facts in other litigation indicating that personal jurisdiction was proper in a particular court. *Cf. L.A. Gem & Jewelry Design, Inc. v. Ecommerce Innovations, LLC*, No. CV 16-9325-RSWL-KSX, 2017 WL 1535084, at *5 (C.D. Cal. Apr. 27, 2017) ("2008 lawsuit, in which [Ecommerce] apparently stated that they had a principal place of business in Torrance, California . . . is unpersuasive in establishing general jurisdiction, as Ecommerce voluntarily dismissed the case without any explicit findings of general jurisdiction"); *see also Regal Beloit Am., Inc. v. Broad Ocean Motor LLC*, No. 4:16-cv-00111-JCH, 2016 WL 3549624, at *3 (E.D. Mo. June 30, 2016) ("[G]eneral jurisdiction is [not] forever established over Defendants solely because of their admissions in a prior unrelated case, particularly when these admissions did not previously result in an explicit finding of general jurisdiction."). No such evidence is adduced here. Moreover, Acuity indicates it sued the defendants in those other cases in California because that was the sole venue in which there was personal jurisdiction over them. Thus, the unrelated litigation does nothing to establish continuous and systematic activity in

4

California by Acuity.

Old Republic further argues that Acuity's online workers' compensation claim form includes language specific to claims in California, indicating that it expects and receives claims in California. As explained by Acuity, the form to which Old Republic refers is a standardized form produced by the Association for Cooperative Operations Research and Development (ACORD). (Affidavit of Christine Matysik, ¶ 3.) The form is meant to be used by any insurance company, agent, or broker throughout the country, and includes language specific to many states in addition to California. Acuity's use of this form does not support general jurisdiction in California. (*Id.* at ¶¶ 7-9.)

### B. Specific Jurisdiction

In order for a court to have specific jurisdiction over a defendant, "the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, __ U.S. __, 134 S.Ct. 1115, 1121 (2014). The relationship between the defendant and the forum state "must arise out of contacts that the 'defendant [itself]' creates with the forum State." *Id.* at 1122 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Those "minimum contacts" must be "with the forum State itself, not ... with persons who reside there." *Id.* Thus, in the Ninth Circuit, specific jurisdiction requires a showing that: (1) the defendant either purposefully directs its activities to the forum or purposefully avails itself of the benefits of the forum's laws; (2) the claim "arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction [ ] comport[s] with fair play and substantial justice, *i.e.*, it [is] reasonable." *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1022–23 (9th Cir. 2017) (quoting *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)).

Here, Old Republic rests its specific jurisdiction argument on a provision in Acuity's policy which states that the policy applies to claims in the "coverage territory," which includes the entire United States. Old Republic argues that because the insurance contract between Midwest and Acuity included this provision, Acuity is contractually bound to defend Midwest in California,

and therefore subject to jurisdiction in California for a contribution claim based upon that policy.[3]

**A.     Old Republic Does Not Meet Its Burden To Establish Purposeful Availment**

On the first factor, purposeful availment, there is a split of authority as to whether the existence of a coverage territory clause constitutes sufficient contact with the forum to support specific jurisdiction. The Supreme Court held, more than fifty years ago, that the existence of an insurance contract with a "substantial connection" to California was sufficient for purposes of due process to establish personal jurisdiction. *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223–24 (1957) (contract delivered to, premiums mailed from, and insured resided in California).

The Ninth Circuit, in *Hunt v. Erie Ins. Group,* 728 F.2d 1244 (9th Cir. 1984), rejected an assertion that a "substantial connection" for purposes of specific jurisdiction was established by the existence of a nationwide coverage territory clause. There, Hunt was a passenger involved in an automobile accident in Colorado, and made a claim as a third party beneficiary to the driver's insurance carrier, Erie Insurance Group ("Erie"). The Erie policy included a clause covering accidents occurring anywhere in the United States. After the accident in Colorado, Hunt moved to California to continue her recovery, and brought suit in California against Erie for denying her coverage for medical and rehabilitation expenses. Hunt alleged breach of contract, breach of fiduciary duty, and bad faith. Erie had no other contacts with California and moved for dismissal based on lack of personal jurisdiction. The Ninth Circuit found there was no support for specific jurisdiction based upon the coverage clause alone. "[The insurer's] failure to structure its policy to exclude the possibility of defending a suit wherever an injured claimant requires medical care cannot, in our view, fairly be characterized as an act by which [the insurer] has purposefully availed itself of the privilege of conducting activities in California." *Id. at* 1247.

---

[3] In California, a claim for equitable contribution in the insurance context is proper when "several insurers are obligated to indemnify or defend the same loss or claim, and one insurer has paid more than its share of the loss or defended the action without any participation by the others." *Fireman's Fund Ins. Co. v. Maryland Cas. Co.,* 65 Cal.App.4th 1279, 1293 (1998). The claim requires establishment of three elements: (1) the insurers share the same level of obligation, (2) on the same risk, (3) as to the same insured. *Id.* at 304 n. 4. "[The] right of equitable contribution belongs to each insurer individually. It is not based on any right of subrogation to the rights of the insured, and is not equivalent to "'standing in the shoes'" of the insured." *Id*. at 1294.

6

A few years later, in *Farmers Ins. Exchange v. Portage La Prairie Mut. Ins. Co.* (9th Cir. 1990) 907 F.2d 911 ("*Portage*"), the Ninth Circuit held that an insurer had shown purposeful availment of the forum where it included a nationwide coverage clause in its policy. The dispute arose from a single-vehicle accident that occurred in Montana, and as to which both Farmers and Portage La Prairie were obligated to provide coverage. The driver was covered by her own policy issued by Farmers in Montana, and by the vehicle owner's insurance issued by Portage. Farmers defended and settled the underlying litigation, although it claimed that Portage was the primary insurer, and that Farmers was an "excess" insurer under the circumstances. *Id.* at 912. Farmers subsequently filed an action against Portage for declaratory relief and damages, alleging bad faith and breach of contract for its refusal to reimburse Farmers. The Ninth Circuit reversed a dismissal by the district court, finding that Portage's territorial policy limit included Montana in its scope, and thereby purposefully availed itself of a Montana forum by contracting to indemnify and defend claims there. *Id.* at 914. "[L]itigation requiring the presence of the insurer is not only foreseeable, but it was purposefully contracted for by the insurer." *Id.*

More recently, in *King v. American Family Mut. Ins. Co.,* 632 F.3d 570, 578 (9th Cir. 2011), the Ninth Circuit held that there were not sufficient contacts with the forum to find specific jurisdiction over an insurer, even though the accident triggering coverage took place in the forum and the policy at issue included a nationwide coverage clause. *King* involved a motorcycle accident occurring in Montana. The Kings were insured by the defendant insurance companies; the vehicles involved in the accident were not covered by their policies. Citing Montana case law, the court held that the lack of any other contacts with the forum other than the accident and the nationwide coverage clause precluded personal jurisdiction. *Id.* at 580 (citing *Carter v. Miss. Farm Bureau Cas. Ins. Co.,* 326 Mont. 350, 109 P.3d 735, 742 (2005)). The court distinguished *Portage*, noting that it concerned an indemnity dispute, while *King* concerned a claim for breach of contract by the insured. *Id.* at 578 n.10.

Several subsequent cases in this Circuit have found that a nationwide coverage clause, without more, is insufficient to establish purposeful availment. *Scott, Blane & Darren Recovery, LLC v. Auto-Owners Ins. Co.*, No. 2:14-CV-03675-ODW, 2014 WL 4258280, at *4–5 (C.D. Cal.

7

Aug. 27, 2014) (*King* "made clear that [the Ninth Circuit's] reasoning in *Portage La Prairie* applies in indemnity actions, while *King* applies in duty-to-defend actions brought by the insured"); *Dokoozian Constr. LLC v. Exec. Risk Specialty Ins. Co.*, No. C15-703 MJP, 2015 WL 12085859, at *3 (W.D. Wash. July 28, 2015) ("The Ninth Circuit has rejected the notion that nationwide coverage provisions automatically give rise to personal jurisdiction over a defendant in a case where an insured brings breach-of-contract claims against its insurer in a foreign state," citing *King*); *Hunt v. Auto-Owners Ins. Co.*, No. 2:15-CV-JCM NJK, 2015 WL 3626579, at *5 (D. Nev. June 10, 2015) ("the Ninth Circuit suggested that a nationwide territory clause alone is insufficient to subject defendants to personal jurisdiction over any contractual dispute in any given forum . . . but is limited to cases arising out of defendants' duties to indemnify and defend claims in any state."); *cf. Hawthorne v. Mid-Continent Cas. Co.*, No. C16-1948RSL, 2017 WL 1233116, at *4 (W.D. Wash. Apr. 4, 2017) ("Because this is a duty-to-defend case and not a simple coverage action, the Court follows [*Portage*] and finds that the combination of nationwide coverage *and* the occurrence of an insured event in Washington is sufficient for the exercise of jurisdiction over plaintiff's case").[4]

Here, the underlying lawsuit in state court was filed by CDC against Webcor, AGA, Midwest, and Viracon. In the instant federal action, Webcor and AGA have alleged that: they were covered by insurance policies; AGA was required to name Webcor as an additional insured on the AGA policies; and Viracon was required to maintain general liability insurance on which AGA was an additional insured. (*See* SAC ¶¶ 41, 44, 47-49.) The federal complaint does not name Midwest or Acuity. (*See id. generally*.) Rather, Old Republic has filed a third party complaint against Acuity, alleging that Old Republic's insureds (AGA and Webcor) were covered

---

[4] However, one district court in the Ninth Circuit has found, subsequent to *King*, that an insurer purposely availed itself of the privilege of conducting activities in the forum through its policy's nationwide territorial coverage clause. *See Evanston Ins. Co. v. W. Cmty. Ins. Co.*, 13 F. Supp. 3d 1064, 1070 (D. Nev. 2014). The district court, citing *Portage*, stated that if the insurer "had wished to avoid suit in all fora except Idaho, it could have limited the coverage territory to the state of Idaho." *Id.* Based on this premise, the court determined that the claim for declaratory relief and equitable contribution "arose from" the insurer's agreement to defend a suit against its insured, and denied the motion to dismiss for lack of personal jurisdiction. The court did not reference *King* or the cases following it.

8

by Acuity's policy issued to Midwest. Old Republic's only claim is one for contribution based its defense of AGA and Webcor in the state court action.

Acuity is an insurer licensed to do business in Ohio and had an Ohio agent who sold a policy to Midwest, an Ohio corporation with Ohio principle place of business. (Kapral Affidavit ¶¶ 11-13.) No part of Midwest's application for insurance had any contact or involvement with California. Acuity submits evidence that the application for insurance did not identify any California person or entity as an additional insured for the Acuity policy. (*Id.* ¶ 12.) Old Republic offers no evidence to the contrary. In approximately February 2014, Midwest notified Acuity of a potential product-liability claim involving Webcor and AGA. (*Id.* ¶ 17.) AGA tendered its defense to Acuity at some point in the litigation, and Acuity rejected the assertion that AGA or Webcor qualified as "additional insureds" under the policy. (*See* Hutchinson Decl., Dkt. No. 142-5, Exh. E, F.)[5]

In short, the basis for jurisdiction asserted here by Old Republic is a nationwide coverage provision and an underlying lawsuit brought in California. The claim by Old Republic here is one for contribution. It is not an action for indemnity, which the Ninth Circuit in *King* found would be subject to personal jurisdiction under nothing more than the nationwide territory clause. It is not even a claim brought by the insured against its insurer, which *King* found would not be subject to personal jurisdiction under these circumstances. *Cf. Dokoozian Constr.*, 2015 WL 12085859, at * 3 (no personal jurisdiction despite nationwide coverage clause in suit by general contractor against its insurers for breach of duty to defend). Instead, it is even more removed from connections to California: an action brought by an out-of-state insurer[6] to recoup payments made on its policy, based on the theory that an out-of state defendant and its out-of-state insurer were also liable for the damages paid in the settlement. Under the controlling authority in *King*, and taking into

---

[5] Though AGA sent a tender demand to Midwest, which was forwarded to and rejected by Acuity, Acuity contends that it did not accept, process, review, or deny any tender *in California* relevant to the underlying dispute. (Kapral Affidavit at ¶17.)

[6] The SAC alleges that Old Republic is an Illinois corporation with its principal place of business in Chicago, Illinois. (SAC ¶ 12.)

9

account the authorities in this Circuit preceding and following *King*, the Court finds that these facts are insufficient to establish purposeful availment of a California forum by Acuity.

### B. No Forum-Related Activities Shown

In addition, Old Republic has not established the second required element for specific jurisdiction: that the contribution arose from Acuity's forum-related activities. *Williams*, 851 F.3d at 1022–23. Old Republic offers no evidence of activity by Acuity in California, much less activity related to the contribution claim here. Indeed, the only contacts with the forum here appear to be letters from Acuity's counsel in Ohio sent to AGA's counsel, stating the reasons Acuity was declining tender under the policy.

### C. Reasonableness Factors Do Not Warrant Finding Specific Jurisdiction

Even assuming Old Republic could establish the first two requirements, the Court would still need to consider whether an exercise of jurisdiction over Acuity under these circumstances would be reasonable considering "fair play and substantial justice" factors. *Williams*, 851 F.3d at 1022–23. Factors for determining reasonableness of specific jurisdiction include: the extent of defendant's "purposeful" interjection; the burden on defendant in defending in the forum; the extent of conflict with the sovereignty of the defendant's state; the forum state's interest in adjudicating the dispute; the most efficient judicial resolution of the controversy; the importance of the forum to plaintiff's interest in convenient and effective relief; and the existence of an alternative forum. *Burger King, supra,* 471 U.S. at 476-477.

Here, the record before the Court indicates no purposeful interjection in California at all by Acuity. There is no evidence offered to indicate that Old Republic could not obtain relief in an alternative forum, or that a California forum is essential to "convenient and effective relief" for Old Republic. While maintaining jurisdiction over Acuity in the third party complaint might afford some degree of efficiency, given that neither Acuity nor Midwest are a party to AGA and Webcor's complaint in the federal action here, this factor does not appear to be significant. Although California has a policy interest in protecting resident policyholders against out-of-state insurers who refuse to pay claims or seek to litigate individual claims in distant fora, *see McGee*, 355 U.S. at 223, those same policy considerations do not hold apply to an equitable contribution

claim between two out-of-state insurers. On the whole, these fairness and justice factors do not warrant a finding of specific jurisdiction over Acuity.

## IV. CONCLUSION

Accordingly, the motion to dismiss for lack of personal jurisdiction over Acuity is **GRANTED**. The Third Party Complaint is **DISMISSED** as against Acuity.

This terminates Docket No. 120.

**IT IS SO ORDERED.**

Dated: November 3, 2017

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**